1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                     **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   MELISSA ANN OROZCO,                    No. 1:23-cv-01373-SKO

12              Petitioner,                 **ORDER ON PLAINTIFF'S SOCIAL
                                            SECURITY COMPLAINT**
13         v.

14   MARTIN O'MALLEY,                       (Doc. 1)
     COMMISSIONER OF SOCIAL
15   SECURITY, [1]

16              Defendant.

17

18                          **I.      INTRODUCTION**

19
          Plaintiff Melissa Orozco ("Plaintiff") seeks judicial review of a final decision of the

20
     Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application

21
     for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").

22
     (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted,

23
     without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

24

25

26   _____

     [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See*
27   https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42
     U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office
     of the Commissioner shall, in [their] official capacity, be the proper defendant.").
28   [2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 10).

## II.    BACKGROUND

Plaintiff was born on August 26, 1970 (Administrative Record ("AR") 245).  Plaintiff filed a claim for DIB on October 19, 2021, alleging a disability onset date of February 1, 2020.  (AR 25).  Plaintiff subsequently amended her onset date to October 19, 2021.  (AR 47).  In her application, she alleged disability based on her congestive heart failure, diabetes, and high blood pressure.  (AR 238).  Plaintiff has an eighth-grade education.  (AR 49).   Plaintiff's most recent work history includes experience as a fieldworker.  (AR 239).

### A.    Relevant Medical Evidence of Record[3]

Because this case centers on Plaintiff's need for an ambulative device, only evidence relevant to this issue is summarized here.[4]  At the hearing, Plaintiff testified that her shortness of breath led her to fall "many times," as she gets tunnel vision before waking up on the floor.  (AR 52-53).  She testified that in the year before her hearing, she fell nine times and she had been prescribed a walker, but she can only walk "so far."  (AR 53).

Plaintiff reported chest pain and mild shortness of breath on October 13, 2021 (AR 418), but her physical exam was unremarkable.  (AR 410).  Shahzeb Nadeem, M.D., diagnosed Plaintiff with cardiomyopathy (AR 420), though a cardiologist later suggested the pain in her chest and shoulder was related to a shoulder sprain, as opposed to any cardiac issue.  (AR 422).  Respiratory and pulse oximetry findings were normal.  (AR 460).  At a December 3, 2021, appointment, Plaintiff denied shortness of breath, and on examination, her lungs and heart were normal.  (AR 503-04).  Treatment notes indicate her musculoskeletal findings were normal, aside from pain in her left shoulder.  (AR 503-04).

Plaintiff presented to the ER on January 1, 2022, with nausea, vomiting, and dizziness.  (AR 556).  She could move all extremities equally (AR 557), and there were no abnormal

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[4] Plaintiff has summarized much medical history that is not relevant to her claim.  Further, because SSI are only available from the month after the month Plaintiff filed her application, and Plaintiff amended her alleged onset date to October 2021, the Court has omitted any medical history outside the relevant time period.  *See* 20 C.F.R. §§ 416.335, 416.501; *see also Thomas v. Berryhill*, No. 1:16-cv-01337-JLT, 2018 WL 534012, at \*5-6 (E.D. Cal. Jan. 24, 2018) (where "the application currently before the Court was for SSI benefits . . . [the] application date began the relevant time period").

1  cardiovascular findings.  (AR 557).  Plaintiff tested positive for Respiratory Syncytial Virus

2  ("RSV") which providers noted explained some of her symptoms.  (AR 558).    She was

3  prescribed Zofran, Meclizine, and Norco.  (AR 558).  At a follow-up on January 6, 2022, Plaintiff

4  again reported episodes of intermittent dizziness, but denied any shortness of breath.  (AR 507,

5  509).  At a February 16, 2022, appointment, Plaintiff's doctor reported her gait was "impaired due

6  to discomfort."  (AR 523).

7        Plaintiff again reported dizziness and shortness of breath on June 9, 2022.  (AR 788-89).

8  Because of Plaintiff's "occasional episodes of dyspnea," Dr. Nadeem ordered a chest x-ray,

9  which demonstrated normal findings and no acute disease.  (AR 790, 810).  On September 13,

10  2022, Plaintiff reported she was suffering from pain in her back and thighs, which resulted in

11  "heaviness" in her legs.  (AR 662).  As a result, Plaintiff reported two episodes where her legs

12  "gave out" and she fell to her knees.  (AR 662).  The doctor prescribed physical therapy twice a

13  week for six weeks, and the physical therapist noted that she had a "good prognosis for meeting

14  problems list[ed] based on current findings coupled with pre-existing conditions."  (AR 664).  At

15  a September 12, 2022, appointment, Plaintiff reported that her pain was a 10 out of 10 on the pain

16  scale, and her physical therapist noted she had a major loss in her range of motion in her lumbar

17  spine.  (AR 662).  At her October 26, 2022, appointment, Plaintiff reported "feeling good", and

18  was able to tolerate therapy with "no break, minimal fatigue."  (AR 660).  Plaintiff attended

19  physical therapy in September and October but canceled or failed to show up to her later

20  appointments.  (AR 648).

21        On November 1, 2022, Plaintiff requested a walker "due to her shortness of breath and

22  gait instability" during a virtual healthcare visit, but she denied any other acute concerns besides

23  the continuing pain in her shoulder.  (AR 746, 748).  Because the visit was virtual, healthcare

24  providers were unable to perform a physical exam.  (AR 748).  Dr. Nadeem assessed that Plaintiff

25  had "unspecified abnormalities of gait and mobility."  (AR 748).  He ordered a screening for

26  respiratory tuberculosis, and initiated the process for Plaintiff to receive "DME [durable medical

27  equipment]," a walker.  (AR 748).

28        On December 26, 2022, Plaintiff reported that the night before, she lost consciousness

3

1    while running after her grandson.  (AR 696).  Her examination, however, revealed normal

2    respiratory, cardiovascular, musculoskeletal, and neurological findings and full strength in all of

3    her extremities.  (AR 696-97).  A pulse oximetry test showed 93% oxygen saturation, which was

4    described as "normal," though her oxygen saturation decreased to 91% with some exertion.  (AR

5    697).  Plaintiff was otherwise not in acute distress, and treatment notes have no mention of an

6    assistive device.  (AR 696-702).

7         On January 6, 2023, Plaintiff reported significant difficulty with walking and that she was

8    unable to walk prolonged distances without becoming short of breath.  (AR 726).  Her doctor

9    opined her symptoms were likely related to congestive heart failure ("CHF") and chronic

10   obstructive pulmonary disease ("COPD"). (AR 729).  Plaintiff again reported shortness of breath

11   and nausea at a January 21, 2023, appointment.  (AR 724).  A February 2023 discharge summary

12   indicates that Plaintiff was prescribed a four-wheel walker for ambulation, though there are no

13   other details related to the walker listed in the summary.  (AR 63-65).

14   **B.    Opinion Evidence**

15        State agency medical consultant M. Mazuryk, M.D., reviewed Plaintiff's file initially on

16   November 30, 2021.  (AR 76-77, 81-83). Dr. Mazuryk concluded that Plaintiff could lift and

17   carry 50 pounds occasionally and 25 pounds frequently; she could sit for six hours and stand/walk

18   for six hours in an eight-hour workday; she could frequently climb ramps/stairs, balance, stoop,

19   kneel, crouch, and crawl; and she could occasionally climb ladders, ropes, or scaffolds.  (AR 81-

20   83).   State agency medical consultant, A. Nasrabadi, M.D., reviewed Plaintiff's file on

21   reconsideration of her claim, which included updated records.   (AR 94-95, 100-02). Dr.

22   Nasrabadi ordered an echocardiogram to assess Plaintiff's cardiac functioning.  (AR 95, 541-46).

23   After receiving this report, Dr. Nasrabadi found that Plaintiff could lift and carry 20 pounds

24   occasionally and 10 pounds frequently; she could sit for six hours and stand/walk for six hours in

25   an eight-hour workday; she could frequently balance, stoop, kneel, crouch, crawl, and climb

26   ramps, stairs, ladders, ropes, or scaffolds; and she should avoid concentrated exposure to

27   workplace hazards.  (AR 95, 100-02).

28

1      **C.      The ALJ's Decision**

2          Plaintiff filed a claim for DIB on October 19, 2021, alleging a disability onset date of

3     February 1, 2020.  (AR 25).  The Commissioner denied Plaintiff's application initially on January

4     13, 2022, and again upon reconsideration on May 26, 2022.  (AR 111-15; 119-24).  Plaintiff

5     requested a hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a

6     hearing on January 4, 2023.  (AR 25).  At the hearing, Plaintiff amended her alleged disability

7     onset date to October 19, 2021.  (AR 47).  In a decision dated March 10, 2023, the ALJ found that

8     Plaintiff was not disabled as defined by the Act after conducting the five-step disability analysis

9     set forth in 20 C.F.R. § 404.1520.  (AR 37).

10         At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

11    October 19, 2021 (step one).  (AR 27).  At step two, the ALJ found Plaintiff suffers from the

12    following severe impairments: obesity; congestive heart failure; cardiomyopathy; cardiomegaly;

13    benign essential hypertension; thoracic, thoracolumbar and lumbosacral disc disorder;

14    polysubstance abuse involving methamphetamine, benzodiazepine, and amphetamine; alcohol use

15    disorder (20 CFR 416.920(c)).  (AR 27).  Plaintiff did not have an impairment or combination of

16    impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

17    Subpart P, Appendix 1 ("the Listings") (step three).  (AR 2630

18         The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the

19    assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

20    to step four, we assess your residual functional capacity . . . . We use this residual functional

21    capacity assessment at both step four and step five when we evaluate your claim at these steps.").

22    The ALJ found Plaintiff could perform the following:

23              light work as defined in 20 CFR 416.967(b) except she can frequently balance,
              stoop, kneel, crouch, or crawl, can frequently climb stairs or ramps, can never

24

_____

25    [5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
      setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES

26    II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P
      (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an
      individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's

27    RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence,
      and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable

28    impairment.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1
2
3

   climb ladders, ropes or scaffolds, can occasionally be exposed to vibrations, can never be exposed unprotected heights or moving machinery parts and can have occasional exposure to atmospheric conditions, as defined in the DOT and SCO, such as dust, noxious odors or fumes, or poor ventilation.

4

(AR 31).

5

   At steps four, the ALJ found that Plaintiff had no past relevant work, and therefore, the

6

transferability of job skills was not at issue.  (AR 34-35).  Considering Plaintiff's age, education,

7

work experience, and residual functional capacity, the ALJ found there were jobs that exist in

8

significant numbers in the national economy that Plaintiff could perform.  (AR 36).  The ALJ

9

based this finding on the testimony of the Vocational Expert ("VE"), who testified at Plaintiff's

10

hearing that he could perform the following jobs: Cleaner/Housekeeper (Dictionary of

11

Occupational Titles ("DOT") 323.687-014)); Marker (DOT 209.587-034); and Routing Clerk

12

(DOT 222.687-022) (AR 36).  The ALJ concluded Plaintiff was not disabled under the Social

13

Security Act.  (AR 37).

14

   Plaintiff sought review of this decision before the Appeals Council, which denied review

15

on April 26, 2023.  (AR 11-16).  Therefore, the ALJ's decision became the final decision of the

16

Commissioner.  20 C.F.R. § 404.981.

17

### III.  LEGAL STANDARDS

18

**A.  Applicable Law**

19

   An individual is considered "disabled" for purposes of disability benefits if he or she is

20

unable "to engage in any substantial gainful activity by reason of any medically determinable

21

physical or mental impairment which can be expected to result in death or which has lasted or can

22

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

23

423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if

24

[their] physical or mental impairment or impairments are of such severity that he is not only

25

unable to do [their] previous work but cannot, considering [their] age, education, and work

26

experience, engage in any other kind of substantial gainful work which exists in the national

27

economy."  *Id.* § 423(d)(2)(A).

28

1    "The Social Security Regulations set out a five-step sequential process for determining

2  whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*,

3  180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).   The Ninth Circuit has

4  provided the following description of the sequential evaluation analysis:

5         In step one, the ALJ determines whether a claimant is currently engaged in
          substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ
6         proceeds to step two and evaluates whether the claimant has a medically severe
          impairment or combination of impairments. If not, the claimant is not disabled. If
7         so, the ALJ proceeds to step three and considers whether the impairment or
          combination of impairments meets or equals a listed impairment under 20 C.F.R.
8         pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled.
          If not, the ALJ proceeds to step four and assesses whether the claimant is capable
9         of performing [their] past relevant work. If so, the claimant is not disabled. If not,
10        the ALJ proceeds to step five and examines whether the claimant has the [RFC] . .
          . to perform any other substantial gainful activity in the national economy. If so,
11        the claimant is not disabled. If not, the claimant is disabled.

12
   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).   "If a claimant is found to be 'disabled' or
13
   'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*,
14
   180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

15
        "The claimant carries the initial burden of proving a disability in steps one through four of
16
   the analysis."   *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.
17
   1989)).   "However, if a claimant establishes an inability to continue [their] past work, the burden
18
   shifts to the Commissioner in step five to show that the claimant can perform other substantial
19
   gainful work."   *Id.* (citing *Swenson*, 876 F.2d at 687).
20
   **B.      Scope of Review**
21
        "This court may set aside the Commissioner's denial of [social security] benefits [only]
22
   when the ALJ's findings are based on legal error or are not supported by substantial evidence in
23
   the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is
24
   'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might
25
   accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)
26
   (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d
27
   1141, 1154 (9th Cir. 2020).
28
                                                 7

1    "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

2    *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by

3    inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

4    Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when

5    the evidence is susceptible to more than one rational interpretation."  *Id.*; *see, e.g.*, *Edlund v.*

6    *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one

7    rational interpretation, the court may not substitute its judgment for that of the Commissioner."

8    (citations omitted)).

9         Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

10   specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v.*

11   *Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a

12   whole, weighing both evidence that supports and evidence that detracts from the

13   [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

14        Finally, courts "may not reverse an ALJ's decision on account of an error that is

15   harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc.*

16   *Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear

17   from the record that 'the ALJ's error was inconsequential to the ultimate nondisability

18   determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d

19   880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon

20   the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

21   (citations omitted).

22                              **IV.    DISCUSSION**

23        Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by

24   substantial evidence because the ALJ failed to account for Plaintiff's need for an assistive device

25   for ambulation in her RFC.  For the following reasons, the Court concludes the ALJ did not err.

26   **A.    Legal Standard**

27        An RFC is "an assessment of an individual's ability to do sustained work-related physical

28   and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling

1  ("SSR") 96-8p, 1996 WL 374184, at *1 (1996); *see also* 20 C.F.R. § 416.945(a).  It reflects the

2  most that a claimant can do despite their limitations.  SSR 96-8p, 1996 WL 374184, at *1.  In

3  formulating the RFC, the ALJ must account for all the claimant's medically determinable

4  impairments, including those that are not "severe," and evaluate "all of the relevant medical and

5  other evidence."  20 C.F.R. § 416.945(a); *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574

6  F.3d 685, 690 (9th Cir. 2009) (holding that "an RFC that fails to take into account a claimant's

7  limitations is defective").  Therefore, an ALJ errs when they provide an incomplete RFC ignoring

8  "significant and probative evidence."  *Hill v. Astrue*, 698 F.3d 1153, 1161-2 (9th Cir. 2012).

9       An RFC assessment is ultimately an administrative finding reserved to the Commissioner.

10  20 C.F.R. § 416.946.    The RFC does not need to directly correspond to a specific medical

11  opinion; rather, "the ALJ is responsible for translating and incorporating clinical findings into a

12  succinct RFC."  *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see*

13  *also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (noting the ALJ's

14  responsibility to weigh conflicting medical evidence and translate accepted medical opinions into

15  "concrete restrictions").  "ALJs are, at some level, capable of independently reviewing and

16  forming conclusions about medical evidence to discharge their statutory duty to determine

17  whether a claimant is disabled and cannot work."  *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir.

18  2022) (citing *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)).    The ALJ's RFC

19  assessment should be affirmed if the ALJ has applied the proper legal standard and their decision

20  is supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th

21  Cir. 2005).

22       Claimants carry the burden of proving they are disabled.  20 C.F.R. § 404.1512(a).

23  However, "Social Security proceedings are inquisitorial rather than adversarial."  *Schiaffino v.*

24  *Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111–12

25  (2000)).  An ALJ has a responsibility to develop a "complete medical history" and to "make

26  every reasonable effort to help [the plaintiff] get medical reports."  20 C.F.R. § 404.1512(d).

27  "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the

28  claimant's interests are considered.'"  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003)

1  (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

2
3
4
> The ALJ is not a mere umpire at such a proceeding . . . . it is incumbent upon the
> ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all
> the relevant facts. He must be especially diligent in ensuring that favorable as well
> as unfavorable facts and circumstances are elicited.

5  *Id.* (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).  However, the duty to develop

6  the record further is only triggered when there is ambiguous evidence or the record does not allow

7  for proper evaluation of the evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

8  2001).  The ALJ's duty to develop the record fully is heightened when a claimant is mentally ill

9  and unable to protect his or her own interests.  *Id.*  If the record includes "specific and sufficient"

10  evidence to evaluate a claim, the record is neither ambiguous nor inadequate.  *Gurin v. Saul*, 842

11  F. App'x 45, 48 (9th Cir. 2021).  An ALJ may discharge their duty by subpoenaing claimant's

12  doctors, submitting questions to claimant's physicians, continuing the hearing, or keeping the

13  record open after the hearing to allow supplementation of the record.  *Tonapetyan*, 242 F.3d at

14  1150.

15  **B.      Analysis**

16  In his decision related to Plaintiff's need for an assistive device, the ALJ stated the

17  following:

18
19
20
21
22
23
24
25
26
27
28
> As you can plainly see, I have not included any limitation that the claimant was
> required to use any assistive device, including a walker. I find that the objective
> medical findings do not support the medical necessity of any assistive device,
> whether it be a cane, walker, wheelchair or motorized scooter. The claimant's
> testimony is simply not supported by the record. During a tele-visit on November
> 1, 2022, the claimant requested a walker due to shortness of breath and gait
> instability (14F/29). Based upon the claimant's request, Dr. Shahzeb Nadeem,
> placed an order for a walker (14F/31-32). Dr. Shahzeb Nadeem never conducted a
> physical examination of the claimant in order to determine whether a walker was
> medically necessary. On December 23, 2022, Dr. Shahzeb Nadeem examined the
> claimant in-person and noted that the claimant was alert and in no acute distress
> (14F/16). The claimant's lung and heart exam were unremarkable (14F/16). Dr.
> Shahzeb Nadeem's report does not identify any objective findings to support the
> need for an assistive device, for example, muscle atrophy, loss of strength, loss of
> sensation or reflexes, or problems with balance and coordination. Moreover, Dr.
> Shahzeb Nadeem does not comment on the claimant's gait (14F/14-18). During a
> tele-visit on January 6, 2023, Dr. Shahzeb Nadeem informed the claimant of the
> results of the recent imaging, stating that there was "no evidence for focal disc
> herniation, significant thecal saturation, significant central or foraminal

10

1

2
stenosis…" and "that MRI did not reveal anything significant in regards to her symptoms." (14F/12).

3

4

5

6
Additionally, on December 26, 2022, approximately 8 weeks after requesting a walker, the claimant was seen at the emergency room and furnished a history that she "was running after her grandson last night when she lost consciousness." (13F/1). The hospital staff performed a physical examination of the claimant, which revealed, among other findings, 5/5 strength in the upper and lower extremities, intact sensation, full range of motion of the upper and lower extremities and no swelling or tenderness of the joints (13F/2).

7

8
Accordingly, I find that the claimant's use of an assistive is not supported by the record. Moreover, I find that there is no evidence that the claimant would require the use of an assistive device for a period of 12 months or more.

9
(AR 35).

10
Plaintiff contends the ALJ erred by finding an assistive device was not medically

11
necessary because Dr. Nadeem had prescribed one.  (Doc. 15 at 9).  The use of a hand-held

12
assistive device is a functional limitation only if it is medically required.  *See* SSR 96-9p, 1996

13
WL 374185, at *7 (July 2, 1996).  To find that a hand-held assistive device is medically required,

14
the ALJ must identify "medical documentation" that (1) establishes the need for a device and (2)

15
"describe[es] the circumstances for which it is needed."  SSR 96-9p, 1996 WL 374185, at *7

16
(July 2, 1996); *see also Dean N. v. Saul*, 2020 WL 430962, at *2 (C.D. Cal. Jan. 28, 2020)

17
("Plaintiff was required to establish both need and the specific circumstance in which he needs

18
the cane before the ALJ could include the usage of a cane in his RFC.").  For instance, medical

19
documentation might describe whether a claimant requires the device "all the time, periodically,

20
or only in certain situations; distance and terrain; and any other relevant information."  SSR 96-

21
9p, 1996 WL 374185, at *7.  A claimant's own testimony does not establish the need for an

22
assistive device.  *Marin v. Astrue*, 2012 WL 5381374, at *4 (C.D. Cal. Oct. 31, 2012) (finding

23
ALJ "justifiably concluded that plaintiff's use of a cane did not warrant a more limited RFC"

24
where only plaintiff's own testimony corroborated her use of a cane).

25
Plaintiff has not established an assistive device was medically necessary.  At most,

26
Plaintiff has put forth evidence that Dr. Nadeem prescribed Plaintiff a walker, and assuming this

27
amounts to a demonstration that Plaintiff needed such a device, Plaintiff has still not provided

28
medical evidence establishing the circumstances for which it is needed, which precludes a finding

1   that it is medically necessary.  *See Downyell, J. v. Kijakazi*, 2022 WL 971335, at \*4 (C.D. Cal.

2   Mar. 31, 2022) (holding that a medical professional's opinion that the plaintiff required an

3   assistive device was insufficient because it did describe the duration, distance, terrain, or any

4   other relevant information related to when a claimant needs the device).  Dr. Nadeem diagnosed

5   Plaintiff with "unspecified abnormalities of gait and mobility," (AR 748-49), but this diagnosis

6   does not provide any relevant information establishing the circumstances in which Plaintiff needs

7   the device.  The February 2023 discharge summary provides even less information, stating only

8   that Plaintiff would be prescribed "a four-wheel walker for use for ambulation."  (AR 64).

9   "Without a physician 'describing the circumstances for which [the cane] is needed,' the ALJ

10  could not have found the cane medically necessary."  *Greer v. Commissioner of Social Security*,

11  No. SA CV 17-01316-DFM, 2018 WL 5885942, at \*5 (quoting SSR 96-9p).  A claimant's own

12  testimony does not constitute required medical documentation establishing the need for an

13  assistive device.  *Marin v. Astrue*, No. 11-09331, 2012 WL 5381374, at \*4 (C.D. Cal. Oct. 31,

14  2012) (finding ALJ "justifiably concluded that plaintiff's use of a cane did not warrant a more

15  limited RFC" where only plaintiff's own testimony corroborated  her need to use an assistive

16  device for ambulation).

17      Plaintiff also contends that the ALJ had a duty to develop the record and send Plaintiff for

18  a consultative examination to determine whether Plaintiff required the use of an assistive device

19  "for ambulating long distances."  (Doc. 15 at 12).  First, the ALJ left the record open after

20  Plaintiff's hearing, allowing her to submit additional evidence. Plaintiff then submitted the

21  February 2023 Discharge Summary which included notes that Plaintiff had been seen for

22  congenital heart failure and pulmonary hypertension, and also stated that she had a prescription

23  for a walker.  (AR 64).  It is the claimant's burden to prove disability by providing the requisite

24  medical evidence. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a); *Tidwell v. Apfel*, 161

25  F.3d 599, 600 (9th Cir. 1999) ("At all times, the burden is on the claimant to establish her

26  entitlement to disability insurance benefits.").  Plaintiff could have submitted an additional

27  medical opinion to support her position that she needs an assistive device.

28      Neither has Plaintiff identified any ambiguity in the record requiring the ALJ to further

1     develop the record.  The ALJ considered medical records from 2021 to 2023, as well as Plaintiff's

2     testimony and opinions by medical consultants.  (AR 28-35).  The ALJ cited various records

3     which noted that Plaintiff had a normal gait and balance and that she ambulated independently

4     without assistive devices.  Plaintiff inconsistently reported a shortness of breath,[6] and there are no

5     objective findings (such as muscle atrophy, a loss of strength, a loss of sensation or reflexes, or

6     problems with balance and coordination) to suggest Plaintiff required an assistive device to

7     ambulate.  Plaintiff relies heavily on records from physical therapist indicating she had a majorly

8     decreased range of motion in her lumbar spine with a 10 out of 10 pain level in September 2022.

9     Plaintiff's emphasis on this record, however, is misplaced.  Even accepting these reports as true,

10    they do not show Plaintiff required an assistive device, nor does it amount to an ambiguity in the

11    evidence.  At most, this demonstrates that Plaintiff did have pain in her lumbar spine, but she

12    lacks medical evidence to support her claim that an assistive device was necessary to walk long

13    distances. The ALJ's decision may be supported by substantial evidence even if the evidence may

14    support a different conclusion.  *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more

15    than one rational interpretation, the court may not substitute its judgment for that of the

16    Commissioner.")

17         Plaintiff's argument is simply a request for the Court to reweigh the medical evidence,

18    which it cannot do.  *Tommasetti*, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion

19    where the evidence is susceptible to more than one rational interpretation).    Plaintiff's

20    disagreement with the ALJ's conclusion is insufficient to trigger the ALJ's duty to develop the

21    record further.  *Dixon v. Saul*, 411 F.Supp.3d 837, 853 (N.D. Cal. Sept. 30, 2019) ("Plaintiff's

22    disagreement with the ALJ's conclusions does not make the record ambiguous or inadequate.").

23         In sum, the ALJ did not err in formulating Plaintiff's RFC.

## V.    CONCLUSION AND ORDER

25         For the foregoing reasons, the Court finds that the ALJ's decision is supported by

26

27    [6] Plaintiff does not argue that the ALJ discounted her subjective symptoms, and therefore, any argument suggesting as much is waived.  *See Butler v. Comm'r of Soc. Sec*., 586 F. App'x 399, 400 (9th Cir. 2014) (unpublished)

28    ("[Claimant] does not challenge the ALJ's [symptom evaluation] finding because she did not raise this issue in her opening brief.").

1  substantial evidence in the record as a whole and is based on proper legal standards. Accordingly,

2  the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of

3  Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant

4  Martin O'Malley, Commissioner of Social Security, and against Plaintiff Melissa Orozco.

5

6  IT IS SO ORDERED.

7  Dated:    **August 28, 2024**                          /s/ *Sheila K. Oberto*

8                                                          UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28